MAKAR, J.,
dissenting.
Less than two weeks before her ninth birthday in March 2010, J.P. lost her mother. Immediately following her mom’s death, J.P. was cared for by her aunt and maternal grandmother, Appellants Nicole and Doreen Feil, respectively, who now appeal an order granting custody of J.P. to Appellee, Larry Pollock, the natural father. Because the trial court acted outside of its jurisdiction by granting relief beyond what the parties requested and relied on an incorrect statutory definition to determine the abandonment issue, I would vacate the order below and remand for findings under the correct version of the statute.
Appellants filed a Petition for Appointment of Guardian shortly after the death of J.P.’s mother in an attempt to become JJP.’s legal guardians. When Appellee, who had minimal contact with J.P. over the years, received notice of the proceedings and of J.P.’s mother’s death, he traveled from his home in California to Florida ostensibly to pick up J.P. and take her back to California. In response, Appellants filed an emergency motion for temporary custody, which was granted, and the case was set for final hearing.
The only legal paper invoking the jurisdiction of the trial court that remained unresolved at the time of the final hearing was the Petition for Appointment of Guardian (the emergency petitions had been disposed of). The order rendered after the final hearing, however, awarded temporary custody of J.P. to Appellants “pending an appropriate transition to the care and custody of her father.”
In so ordering, the trial court made a custody determination, a matter that was not raised in the Petition for Appointment of Guardian. Appellants petitioned only for guardianship, not for permanent custody; the trial court nonetheless awarded custody to Appellee. But neither party had invoked the jurisdiction of the trial court to request this award. Because parental rights cannot be determined in a guardianship proceeding, In re Guardianship of J.L.C., 567 So.2d 21, 21 (Fla. 2d DCA 1990), the trial court acted without jurisdiction in entering the custody order.
As to guardianship, a trial court may award guardianship of a minor to a third party while a natural parent is living only when the third party can show, by clear and convincing evidence, the natural parent has abandoned the child or placement of the child with the natural parent would cause a detriment to the child. See State ex rel. Sparks v. Reeves, 97 So.2d 18, 20 (Fla.1957). In making this assessment, a trial court must apply the definition of “abandoned” or “abandonment” in section 39.01(1), Florida Statutes, that was in effect at the time the petition was filed. State v. J.C.H., 680 So.2d 606, 607 (Fla. 2d DCA 1996); State v. Greenberg, 564 So.2d 1176,1177 (Fla. 3d DCA 1990).
Here, the trial court relied upon an earlier version of the statute (2008), one that was amended to address the degree of *163 parental involvement necessary to avoid a finding of abandonment (“Marginal efforts and incidental or token visits or communications are not sufficient to establish or maintain a substantial and positive relationship with a child”) and the effect of incarceration on the abandonment issue (“The incarceration of a parent, legal custodian, or caregiver responsible for a child’s welfare may support a finding of abandonment.”). § 39.01(1), Fla. Stat. (2010). Both of these statutory provisions play a significant role in this case due to the very limited nature of Appellee’s involvement in J.P.’s upbringing over the past decade and his recent incarceration on high profile[2] federal steroid possession and distribution convictions (his current wife in California was a co-defendant and received probation).[3]
On remand, Appellants should be given the opportunity to prove abandonment under the correct version of the statute; they should also be allowed to show that Appel-lee’s efforts are “marginal” and his visits or communications “incidental or token” under the statute. Given the emotionally and economically stable home and highly supportive relationship that J.P. has with her maternal aunt and maternal grandmother, the lack of financial and other support from Appellee over most of J.P.’s life, and the long-estranged relationship between the two, these two important statutory factors could easily tip the balance in Appellants’ favor or to Appellee’s detriment. J.P.’s long-term well-being should be adjudged on a legally correct standard, nothing less. Accordingly, I would vacate the order appealed and remand for further proceedings.

. Appellee also had prior convictions for attempted kidnapping and unlawful possession of a machine gun; in 2005 there was an uncorroborated allegation that Appellee improperly touched his daughter.

. See Mark Fainaru-Wada Lance Williams, "DEA touts ‘largest steroid enforcement action in U.S. history' ”, San Francisco Chronicle, Sept. 24, 2007, at http://www.sfgate.com/ sports/article/DEA-touts-largest-steroid -enforcement-action-in-252 1297.php (dubbed "Operation Raw Deal”, the DEA said the crackdown was "largest steroid enforcement action in U.S. history” spanning "27 states and nine foreign countries, resulting in 124 arrests and the seizure of 56 steroid labs, $6.5 million and 232 kilograms of steroid powder produced in China — the site of the 2008 Summer Olympics.”). Appellee and his current wife operated a lab in Mexico through which they sold steroids illegally.